UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ENDURANCE AMERICAN INSURANCE COMPANY, UNITED STATES FIRE INSURANCE COMPANY, *and* NAVIGATORS INSURANCE COMPANY,

Plaintiffs,

*– against –*

AGRICO SALES, INC.,

Defendant.

**OPINION & ORDER**

25-cv-03896 (ER)

RAMOS, D.J.:

Endurance American Insurance Company, United States Fire Insurance Company, and Navigators Insurance Company (collectively the "Insurers") bring suit against Agrico Sales, Inc. ("Agrico") pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"). Before the Court is Agrico's motion to dismiss the amended complaint, to transfer the case to the Western District of Washington, or to stay the case. For reasons set forth below, the motion to dismiss is GRANTED.[1]

## I. BACKGROUND

### A. Factual Background[2]

Endurance American Insurance Company is incorporated in Delaware with its principal place of business in New York. Doc. 5 ¶ 2. United States Fire Insurance Company is incorporated in Delaware with its principal place of business in New Jersey. *Id.* ¶ 3. Navigators Insurance Company is incorporated in New York with its principal

---

[1] Because the Court declines to entertain the action pursuant to the Declaratory Judgment Act, it does not reach the issues of transferring or staying the action.

[2] The background is drawn from factual allegations in the amended complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), documents attached to the complaint as exhibits, and documents incorporated by reference therein, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). The Court accepts all well-pleaded factual allegations as true. *Id.*

place of business in Connecticut. *Id.* ¶ 4. Agrico is incorporated in Texas with its principal place of business in Louisiana. *Id.* ¶ 6. Agrico designs, constructs, and sells shiploading systems. *Id*.

Endurance American Insurance Company, as the lead insurer and through its agent Sompo International, issued a policy of marine cargo insurance ("the Policy") to Agrico with coverage beginning on March 15, 2019. *Id.* ¶ 13. The Policy covered, among other equipment, a shiploading system, known as Shiploader 691 (the "Shiploader"), "against all risks of physical loss or damage . . . from any external cause whatsoever." *Id.* ¶ 17. The Shiploader was rigged and secured onto a barge by Oxbo Engineering LLC ("Oxbo") for transit from Vancouver, Washington to Vancouver, British Columbia on April 1, 2019. *Id.* ¶¶ 20–21. The Shiploader fell and was damaged while at sea on April 9, 2019. *Id*. ¶ 21.

The barge then diverted to Oregon to assess the damage without ever making it to Vancouver, British Columbia. *Id.* ¶ 22. Agrico made a claim under the Policy, and the Insurers acknowledged that the Policy provided coverage for the damage to the Shiploader. *Id.* ¶¶ 23–25. The Insurers paid Agrico $6,314,500 in policy proceeds. *Id.* ¶ 25.

Following the damage and repair to the Shiploader, Agrico and the Insurers jointly filed suit against Oxbo in the Western District of Washington on April 11, 2022, for improperly loading, lashing, and securing the Shiploader (the "Subrogation Suit"). *Id.* ¶¶ 70–71. In the Subrogation Suit, Agrico and the Insurers claimed losses in excess of $6,000,000, *id.* ¶ 73, and "Agrico did not identify with any specificity additional losses above and beyond the cost of repairing the Shiploader," *id.* ¶ 77. Agrico and the Insurers settled the Subrogation Suit with Oxbo in June 2024, recovering $6,813,341, which is being held in escrow (the "Settlement Fund"). *Id.* ¶ 79.

Agrico then sought the Insurers' consent to recover a large portion of the Settlement Fund to fully recover its losses, claiming it was entitled to an additional

$2,600,000 pursuant to the Policy. *Id.* ¶¶ 26, 81. According to the Insurers, the additional losses that Agrico claimed stem from the cost of a standby tug at the final destination of Vancouver, British Columbia, *id.* ¶¶ 50–51, and economic loss from the damage to and repair of the Shiploader, *id.* ¶¶ 57–58.[3] The Insurers have declined to pay this additional amount, asserting that the Policy does not cover those losses. *Id.* ¶ 27.

Agrico filed an action in the Western District of Washington on April 8, 2025, one day short of six years after the accident, against these same three insurers (the "Washington Action").[4] In that action, Agrico seeks recovery of the $2,600,000, as well as attorneys' fees, interests and costs, and bad faith damages. Doc. 34-1 ¶¶ 23, 53–58. Approximately one month later, on May 9, 2025, the Insurers filed the instant action in this district seeking a declaration that the $2,600,000 in additional damages are not covered by the Policy. Doc. 1. After the Insurers initiated the instant action, they filed an answer in the Washington Action on August 26, 2025, asserting affirmative defenses that mirror their arguments in this action, Doc. 34-5, as discussed further below.

The first cause of action in this case seeks a declaration that Agrico's claimed additional losses are time barred by the Policy as interpreted pursuant to New York law.[5] Doc. 5 ¶¶ 47–48. The Insurers' second cause of action seeks a declaration that costs related to the standby tug are not recoverable under the Policy's Sue & Labor clause because it "is solely for the benefit of Plaintiffs, as insurers," and it only covers losses incurred from the "defense, safeguard, and recovery" of the Shiploader. *Id.* ¶¶ 52–55. The Insurers allege that Agrico also claims additional losses associated with the physical

---

[3] Agrico does not assert that its additional losses arose from any specific events (i.e., a standby tug or economic loss). Doc. 34-1.

[4] "Court filings in other lawsuits are quintessential materials of which the Court may take judicial notice." *Yencho v. Chase Home Finance LLC*, No. 14-CV-230 (NSR), 2015 WL 127721, at *1 n.1 (S.D.N.Y. Jan. 8, 2015) (citing *Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir. 2000)).

[5] The Policy has a choice of law provision which states that any dispute will be adjudicated pursuant to federal admiralty law and, where admiralty law does not apply, pursuant to the substantive laws of New York state. Doc. 5 ¶ 46.

damage to the Shiploader, namely profits on third-party invoices and markups on sub-contractor/vendor invoices related to the Shiploader's repair. *Id.* ¶¶ 57–58. The third cause of action seeks a declaration that profits on third-party invoices are not recoverable under the Policy. *Id.* ¶ 63. The fourth cause of action seeks a declaration that "markups on third party invoices do not constitute physical loss or damage and are not recoverable under the Policy." *Id.* ¶ 68. The Insurers' fifth cause of action seeks a declaration that they are entitled at least to $6,314,500, the amount they allegedly paid to Agrico for the repair of the Shiploader. *Id.* ¶¶ 74, 84. Agrico also seeks priority recovery of the Settlement Fund pursuant to the Made Whole Doctrine;[6] the sixth cause of action seeks a declaration that Agrico is not entitled to priority of payment because any damages that it incurred are not recoverable pursuant to the Made Whole Doctrine "under any applicable substantive law." *Id.* ¶¶ 86, 90–91. The seventh cause of action seeks a declaration that the Insurers are immediately entitled to the difference between what is in the Settlement Fund and the additional amounts to which they expect Agrico to claim entitlement, amounting to $4,496,618.80.[7] *Id.* ¶¶ 96–97. Lastly, the eighth cause of action seeks a declaration that if the Court determines Agrico is entitled to any portion of the Settlement Fund, the Insurers are entitled to demand that Agrico pay a pro-rated amount of the $1,152,308 that the Insurers paid in attorneys' fees in the Subrogation Suit. *Id.* ¶¶ 99–102.

---

[6] The "Made Whole Doctrine" (or "Make Whole Doctrine") provides that after an at-fault third party has paid damages for the losses it caused, the insured is entitled to recover the total amount required to fully compensate its losses before the insurer can recover its payment to the insured. *See* 44A Am. Jur. 2d *Insurance* § 1733 (2026); *Barnes v. Independent Automobile Dealers Association of California Health & Welfare Benefit Plan*, 64 F.3d 1389, 1394–95 (9th Cir. 1995).

[7] To reach this amount, the Insurers first subtracted the total cost of repairing the Shiploader ($6,339,500.00) from the total amount claimed in the Subrogation Suit ($8,631,195.20) to estimate that Agrico is asserting a claim to an additional $2,291,695.20 in damages. Next, the Insurers subtract $2,291,695.20 from the amount in the Settlement Fund ($6,813,314), which comes out to $4,496,618.80. The Insurers, therefore, allege that the minimum amount they would recover from the Settlement Fund, if Agrico is entitled to the full additional amount they claim, is $4,496,618.80. Doc. 5 ¶¶ 96–97.

### B. Procedural Background

The Insurers filed their initial complaint, Doc. 1, on May 9, 2025, and an amended complaint on May 12, 2025, seeking declaratory relief, Doc. 5. Agrico filed an answer to the amended complaint on July 3, 2025. Doc. 14. Agrico then filed a motion to dismiss on November 18, 2025, which requested the Court to decline to entertain the action pursuant to the Declaratory Judgment Act, to transfer the case to the Western District of Washington, or to stay the case. Doc. 32.

## II. LEGAL STANDARDS

### A. Declaratory Judgment Act, 28 U.S.C. § 2201(a)

The Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). To further guide the district courts, the Second Circuit has provided a non-exhaustive list of factors to consider:

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Insurance Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023) (citation modified) (the "*Admiral Insurance* factors"). District court judges have "broad discretion to weigh the factors." *Id.*

**B. The Purpose of the DJA**

One of the primary purposes of the DJA is to enable parties to establish their legal rights before the controversy has reached the point at which damages have fully accrued and a party seeks a remedy for those damages. *See Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963) ("The purpose of the declaratory remedy is to 'avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.'") (quoting *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937)); *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) ("[T]he declaratory judgment procedure 'creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy.'") (quoting Wright, *The Law of Federal Courts* § 100, at 671 (4th ed. 1983)); *Gianni Sport Ltd. v. Metallica*, No. 00 CIV. 0937 (MBM), 2000 WL 1773511, at *4 (S.D.N.Y. Dec. 4, 2000) (finding the claim "fall[s] beyond the scope of the Declaratory Judgment Act's purpose" because "[a]ny damages that are due have already accrued").

Courts have reaffirmed and elaborated on this sentiment in the context of insurance disputes. Declaratory judgments are appropriate to clarify rights under insurance contracts where the full extent of the insurer's damages have not yet accrued because the declaratory judgment can help guide the insurer and insured's "conduct going forward to limit or eliminate any future damages" and thus serves "a useful forward-looking function." *Starr Indemnity & Liability Co. v. Exist, Inc.*, No. 23-CV-786 (LJL), 2023 WL 4029821, at *4 (S.D.N.Y. June 14, 2023), *aff'd*, No. 23-912, 2024 WL 503729 (2d Cir. Feb. 9, 2024); *see also Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 426 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003) ("[T]here are circumstances in which anticipatory judgments of non-liability may be appropriate under the DJA, particularly in regards to claims asserting unaccrued or undefined rights or obligations

arising under contractual relations such as insurance . . . ."); *Government Employees Insurance Co. v. Saco*, 12-cv-5633 (NGG) (MDG), 2015 WL 1527611, at *7 (E.D.N.Y. Mar. 31, 2015) ("The DJA authorizes federal courts to provide relief to a plaintiff who 'seeks to establish a right in order to guide his future conduct . . . .'") (quoting *Channel Master Corp. v. JFP Electronics Corp.*, 263 F. Supp. 7, 9 (E.D.N.Y. 1967)).

Likewise, courts have emphasized that a declaratory judgment action is not appropriate where an insurer solely "seeks . . . declaration that [it] is not liable on already accrued claims." *Starr*, 2023 WL 4029821, at *5. Thus, "where the declaratory judgment action seeks solely to determine whether the insurer is liable for losses already accrued and there is no threat of future damages, the action ceases to have a forward-looking function impacting intended future conduct" and, therefore, is improper. *Id.*; *see also National Union Fire Insurance Co. of Pittsburgh, PA. v. International Wire Group, Inc.*, No. 02 CIV. 10338 (SAS), 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) (dismissing an action for declaratory judgment because "[i]t does not seek a prospective determination of its rights and responsibilities under the insurance contract []so that it can avoid future damages[], but rather a finding that it is not liable for damages alleged to have already accrued"). Additionally, courts consistently dismiss requests for declaratory relief when there is a breach of contract claim dealing with the same set of facts in the same action. *Commercial Lubricants, LLC v. Safety-Kleen Systems, Inc.*, No. 14-CV-7483 (MKB), 2017 WL 3432073, at *17 (E.D.N.Y. Aug. 8, 2017) (collecting cases).

## III. DISCUSSION

Agrico moves to dismiss the action, requesting that the Court use its discretion "to decline to entertain this action as an improper use of the Declaratory Judgment Act." Doc. 35 at 3. In particular, it argues that all of the claims should be dismissed because the Insurers are "essentially asserting affirmative defenses and seeking determination of whether [they] are liable for damages that have already been incurred." *Id.* at 10. In fact, after the filing of this suit, the Insurers filed an answer in the Washington Action and

asserted affirmative defenses, Doc. 35 at 10, that mirror their claims here, Doc. 34-5. Ultimately, the *Admiral Insurance* factors weigh against this Court entertaining the action.[8]

In the instant complaint, the first through fourth causes of action all seek declarations relating to damages and claims arising directly from the damage to and repair of the Shiploader. The fifth through eighth causes of action all seek declarations regarding the distribution of the Settlement Fund.[9]

**A. First Through Fourth Causes of Action**

Agrico argues that the first through fourth causes of action are not distinguishable from those in *Starr*, in that they are all principally about liability for past damages. Doc. 35 at 8–10. The Insurers counter that the first cause of action, seeking the barring of claims under the Policy for damage to the Shiploader, is proper because it seeks both present and prospective relief, insofar as it seeks to bar Agrico's current and future claims for additional payments under the Policy. Doc. 38 at 13. Similarly, the Insurers contend that the second through fourth causes of action, seeking declarations that they are not liable for Agrico's economic losses, are proper because they seek clarifications of the rights and obligations pursuant to the Policy. *Id.* Specifically, they argue that these claims are distinguishable from *Starr* on four grounds: (1) the Insurers have already paid the full amount to which they believe Agrico is entitled, and Agrico is now seeking additional damages, (2) by seeking a declaration of its rights and obligations pursuant to the Policy, the Insurers are seeking prospective relief under their contract, and "[t]he

---

[8] The prior-filed Washington Action addresses the same issues brought in this action, and the requested relief relates to damages that have already fully accrued.

[9] Agrico also claims, in a conclusory manner, that the Insurers are not entitled to declaratory relief because "they have not issued any formal declination of Agrico's claims." Doc. 35 at 8. But Agrico fails to develop this argument and did not provide any case law to support this proposition. "[W]here, as here, a party only adverts to an issue 'in a perfunctory manner, unaccompanied by some effort at developed argumentation,' [a court] will deem such issues waived." *Giambalvo v. Suffolk County, New York*, 155 F.4th 163, 180 (2d Cir. 2025) (quoting *Tolbert v. Queens College*, 242 F.3d 58, 75 (2d Cir. 2001)). Therefore, Agrico has waived this argument.

disfavoring of declaratory judgment actions relating to past acts, on which the *Starr* Court relied, relates to tort claims, not contract claims," (3) the prevention of avoidable damages, on which the *Starr* Court focused, is only one of the DJA's many purposes, and, in any event, this action serves that purpose insofar as it would allow the Insurers to "avoid the administrative expense associated with maintaining an open claim file indefinitely," "minimize the accrual of interest," and "eliminate the business impact of keeping an open claim reserve," and (4) the declaratory relief is not improper just because it may constitute affirmative defenses to Agrico's breach of contract claim. *Id.* at 13–18.[10]

The Court determines that the dispute is analogous to *Starr* because the Insurers in this action are seeking declarations that they are not liable for damages that have already accrued. In *Starr*, Exist, the insured, made two claims pursuant to its insurance policy with Starr, the insurer, stemming from incidents in 2021. *Starr*, 2023 WL 4029821, at *1–2. Without informing Exist whether its claims were accepted, Starr filed an action in 2023 seeking a declaration that the insurance policy did not cover the two claims. *Id.* at *2–3. The district court dismissed the complaint, declining to entertain the request for declaratory judgment, because Starr was seeking judgement "based entirely [ ] on past acts," and, therefore, failed to seek prospective relief. *Id.* at *7 (quoting *Mariah Re Ltd. v. American Family Mutual Insurance Co.*, 52 F. Supp. 3d 601, 623 (S.D.N.Y. 2014), *aff'd sub nom. Maria Re Ltd. ex rel. Varga v. American Family Mutual Insurance Co.*, 607 F. App'x 123 (2d Cir. 2015)). The district court also determined that the request for declaratory judgment (1) failed to serve a useful purpose in clarifying legal relations,

---

[10] The Insurers also argue that, in *Starr*, the district court's concern that allowing the insurer to "seek[] a judgment that it does not have to pay out for its already accrued losses" would "serve[] no purpose other than as a method for [the insurer] to preempt [the insured] . . . from filing their own suit and choosing the forum" was misplaced because there are guardrails to prevent the misuse of the first-filed presumption. *Starr*, 2023 WL 4029821, at *5; Doc. 38 at 18. But the Insurers' argument ignores the fact that the Second Circuit explicitly affirmed that finding. *Starr*, 2024 WL 503729, at *1 (holding that the district court "was entitled to conclude that Starr's declaratory judgment suit constituted 'procedural fencing or a race to res judicata'" on the facts of the case).

(2) would not relieve uncertainty going forward, and (3) constituted procedural fencing by allowing the insurer to "beat the insured to the courthouse." *Id.* at *5. The Second Circuit affirmed these three determinations while finding that the three other *Admiral Insurance* factors were not especially relevant. *Starr*, 2024 WL 503729, at *1–2.

In the instant action, the Shiploader has already been damaged, and the losses relating to that damage and its repair have already occurred. So, the fact that the Insurers have already paid Agrico an amount that they deem sufficient to cover the losses is not enough to distinguish this action from *Starr*. Both cases are about an insurer disclaiming liability for losses that have already fully accrued.

Seeking clarification of rights and obligations under the Policy does not constitute prospective relief because the purpose of the clarification is to disclaim liability for already accrued damages. Doc. 5 ¶¶ 48, 55, 63, 68. The Insurers' counterargument that the "disfavoring of declaratory judgments relating to past acts, on which the *Starr* Court relied, relates to tort claims, not contract claims" also lacks merit. Doc. 38 at 14. While the district court in *Starr* did rely on *National Union Fire*, 2003 WL 21277114, in which the insurer sought a declaration of nonliability for tort claims, the Second Circuit affirmed the decision that the district court properly exercised its discretion in a breach of contract claim because it related to already accrued damages.[11] *Starr*, 2024 WL 503729. Since the reasoning of the Second Circuit in *Starr* centered around the fact that all of the damages had already accrued, *see Starr*, 2024 WL 503729, at *1, this Court also does not see a compelling reason why whether the claim is based in tort or breach of contract should significantly alter the analysis.

The Insurers rely on *Luckenbach* to assert that the DJA is proper for a contract action even when the damages have already accrued, Doc. 38 at 15–16, but that case was

[11] In addition, and contrary to the Insurers' assertions, *National Union Fire* also involved a contract claim. The insurer in *National Union Fire* also sought a declaration that it had not breached its contract. *National Union Fire*, 2003 WL 21277114, at *1, *5.

about a challenge to the invocation of the DJA on grounds that the claim was time-barred. *Luckenbach*, 312 F.2d at 548–52. *Luckenbach* does not analyze when a court can properly decline to entertain an action under the DJA and does not discuss the *Admiral Insurance* factors. *Id.* The Insurers also point to *Government Employees Insurance Co. v. Saco*, No. 12-CV-5633 (NGG) (MDG), 2014 WL 639419 (E.D.N.Y. Feb. 18, 2014), because the court permitted the insurer to use the DJA in that action to disclaim its duty to indemnify "even though the insured's damages had already been established in the underlying lawsuit." Doc. 38 at 16. While the court in *Saco* did entertain the request for declaratory relief, the court's analysis focused primarily on whether the controversy was justiciable and ripe. *Saco*, 2014 WL 639419, at *3–7. The courts in *Starr* and *National Union Fire*, on the other hand, directly address the question of whether a court should entertain a request for declaratory relief when all of the damages have already accrued, and so their analysis is more pertinent. Additionally, the court in *Saco* distinguished *National Union Fire* because in that controversy the insured had filed a suit on the same facts. *Saco*, 2014 WL 639419, at *7. Lastly, *Saco* did not fully consider the *Admiral Insurance* factors, *id.*, which the Second Circuit has now clarified should be the touchstone of a district court's analysis when deciding whether to entertain an action for declaratory judgment, *Admiral Insurance*, 57 F.4th at 99–100.

While the DJA may serve several functions, it is clear that it is not intended to provide declarations of non-liability for damages that have already fully accrued. *See Gianni Sport*, 2000 WL 1773511, at *4; *National Union Fire*, 2003 WL 21277114, at *5; *Starr*, 2023 WL 4029821, at *5.

The Insurers also assert that even though the requested declaratory relief "may constitute affirmative defenses . . . [it] does not make it improper for declaratory relief." Doc. 38 at 18. They cite *Beacon Theatres, Inc. v. Westover*, *In re Quigley Co., Inc.*, and *Luckenbach*, but *Beacon Theatres* and *Luckenbach* do not deal with whether it is proper to use the DJA to assert affirmative defenses when there is a pending suit on the same

issues, regardless of whether the other action was filed after the request for declaratory relief or before, as is the case in this action. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959); *Luckenbach*, 312 F.2d 545. The court in *In re Quigley Co., Inc.*, on the other hand, explicitly found the use of declaratory relief to be acceptable because it would "not interfere with proceedings in any other court" since there were "no other actual or contemplated proceedings designed to obtain coercive relief." *In re Quigley Co., Inc.*, 361 B.R. 723, 739 (Bankr. S.D.N.Y. 2007). In fact, that court noted that a suit for declaratory judgment is not proper if it is intended "to wrest control over the decision-making process from the plaintiff's forum of choice." *Id.* Rather, "courts regularly reject the use of the declaratory judgment procedure to anticipatorily assert affirmative defenses." *Windstream Services, LLC v. BMG Rights Managment (US) LLC*, No. 16-cv-5015 (KMW) (RLE), 2017 WL 1386357, at *9 (S.D.N.Y. Apr. 17, 2017). While this action is not anticipatory, the reasoning behind these cases suggests that the DJA is not proper when it is used to assert affirmative defenses as a means to change the forum the action is adjudicated in, which is what the Insurers have essentially attempted to do by filing this action.

1. *Analysis of the* Admiral Insurance *Factors*

In *Starr*, the Second Circuit affirmed that it was proper to find that a request for declaratory relief on already accrued damages failed to serve a "useful purpose" and did not necessarily "finalize the controversy and offer relief from uncertainty." *Starr*, 2024 WL 503729, at *1 (quoting *Admiral Insurance*, 57 F.4th at 99–100). The existence of the first-filed Washington Action also cuts against the necessity of this suit to clarify and settle the legal dispute and relieve uncertainty, since the same issues are in dispute in that action. *See National Union Fire*, 2003 WL 21277114, at *6 (finding that "the instant suit is not necessary to clarify and settle the legal relations of the parties or to afford relief from uncertainty" because the parties' "interests can be fully adjudicated" in a different

pending action). Therefore, the first and second factors weigh against entertaining the Insurers' request for declaratory relief.

Agrico contends that the Insurers should have addressed these claims in their answer to the Washington Action, which the Insurers ultimately did in August 2025. Doc. 35 at 10. The Insurers contend that this Court should decide the issues because it is the more convenient forum. Doc. 38 at 11. Since the Insurers' action is premised on their desire for this new forum instead of the forum Agrico selected, it arguably constitutes procedural fencing. "Courts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff." *National Union Fire*, 2003 WL 21277114, at *6. The third factor weighs against the Court issuing a declaratory judgment.

Friction between sovereign legal systems is not at issue here because both actions are filed in federal district court, so the fourth factor is neutral. The dispute between Agrico and the Insurers about the proper forum centers around which court can best and most efficiently provide relief for the underlying claims. In affirming *Starr*, the Second Circuit determined the fifth factor was "irrelevant" because the insurer was "entitled to the same remedy—a declaration of nonliability—whether it present[ed] its claims as the plaintiff in a declaratory judgment action or as a defendant in an action for breach of contract." *Starr*, 2024 WL 503729, at *2. Following this reasoning, the fifth factor does not weigh heavily either in favor or against entertaining the request for declaratory judgment. The Insurers assert three arguments for why this would be a more effective remedy: (1) the accrual of prejudgment interest, (2) "the administrative costs of maintaining open claim files," and (3) "the bad faith consequences of being forced into a decision to pay, deny or do nothing." Doc. 38 at 17. However, the Insurers fail to show why the Washington Action would not address the first two concerns just as effectively. In so far as the third point supports the Insurers' contention, it still does not do enough to make the factors weigh in favor of entertaining the action, and this is especially so since

Agrico has already alleged bad faith damages in the prior-filed Washington Action. Doc. 34-1 ¶¶ 52–58.

Since this is the second-filed action, and both actions deal with the same facts and legal issues, the interest of judicial economy weighs against the exercise of jurisdiction. *Cf. XL Insurance America, Inc. v. DiamondRock Hospitality Co.*, 414 F. Supp. 3d 605, 610 (S.D.N.Y. 2019) (determining that it would be "uneconomical" to maintain an action for declaratory judgment when there is a parallel case pending in state court (quoting *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495 (1942))); *Williams v. City of New York*, No. 03 CIV. 5342 (RWS), 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) ("[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative.").[12]

Ultimately, the first through fourth causes of action focus entirely on losses that have already accrued. Without a prospective function and considering the Washington Action, this action does not serve a clear purpose. *See Starr*, 2023 WL 4029821, at *5 ("Plaintiff solely seeks a judgment that it does not have to pay Plaintiff out for its already accrued losses related to these claims. Such relief serves no purpose other than as a method for Plaintiff to preempt Defendant—the natural plaintiff who could sue for damages on a breach of contract theory—from filing their own suit and choosing the forum.").

Agrico has already sued for damages on a breach of contract claim in the Washington Action, and the Insurers have answered and asserted affirmative defenses. The Court therefore does not see a compelling reason to entertain the Insurers' request and declines to do so.

---

[12] While *XL Insurance* and *Williams* are not directly analogous, the Court finds their discussion of judicial economy to be persuasive when there is a pending suit on the same or similar facts in another court.

**B. Fifth Through Eighth Causes of Action**

The fifth through eighth causes of action relate to the parties' claims to the Settlement Fund. Doc. 38 at 12. The fifth and sixth causes of action directly relate back to adjudicating the proper payment of losses from the damage to the Shiploader. Doc. 5 ¶¶ 84, 91. The seventh cause of action seeks the disbursement of part of the Settlement Fund while the proper distribution of the rest of the Fund is adjudicated, and the eighth cause of action seeks attorneys' fees if Agrico does receive a portion of the Fund. *Id.* ¶¶ 97, 102.

The Insurers contend that these claims present the Court with a substantial legal controversy, warranting a declaratory judgment. Doc. 38 at 12. The Court finds that there is an actual case or controversy such that this dispute is ripe for adjudication. However, *Admiral Insurance* clarified that the inquiry does not end at determining if there is an actual case or controversy. *Admiral Insurance*, 57 F.4th at 92–96, 99–100. The Insurers contend that these claims satisfy the first and second *Admiral Insurance* factors and go beyond the issues in *Starr*. Doc. 38 at 12–13. Specifically, they argue that the claims "(1) do not seek determination of liability for damages that have already been incurred" because "neither party has taken the Settlement Fund to the detriment of the other," "(2) do not involve rights that have already accrued" because the Insurers are asking the Court to "determine" the "right to the Settlement Fund," and "(3) are not in the way of affirmative defenses." *Id.* at 12.

While there is an actual case or controversy between the parties, the fifth through eighth causes of action are similar to the first through fourth. Nominally, the dispute about the rights to the Settlement Fund is about distributing money being held in escrow. But, the adjudication of these rights and the causes of action all necessarily rely on the losses stemming from the damage to the Shiploader and how much Agrico is entitled to recover. These claims fail to be prospective in nature and relate only to already accrued

damages, with which the Washington Action already deals. Whether the claims are affirmative defenses is not dispositive in this inquiry.

The Court does not see a compelling reason to entertain the Insurers' request for declaratory judgment on the fifth through eighth causes of action and declines to do so.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Docs. 32 and 41, and close the case.

It is SO ORDERED.

Dated: July 10, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.